IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HEARTHWARE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: 11 C 5233 |
| v. | ) | |
| | ) | |
| E. MISHAN & SONS, INC. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Hearthware, Inc., owner of the "NU WAVE" trademark, sues E. Mishan & Sons, Inc.

("Mishan" or "Emson"[1]), owner of the "Super Wave" trademark. Hearthware brings counts for

copyright infringement (Count I), 17 U.S.C. §§ 101 *et seq.*, and federal trademark infringement

(Count II), 15 U.S.C. § 1114. Hearthware also brings three counts under Section 43(a) of the

Lanham Act, 15 U.S.C. § 1125(a), including false association/designation of origin (Count III),

false advertising (Count IV), and unfair competition (Count V). Finally, Hearthware asserts

Illinois state law claims for deceptive trade practices in violation of the Uniform Deceptive Trade

Practices Act (Count VI), 815 I.L.C.S. § 510/1 *et seq.*, common law trademark infringement

(Count VII), and unfair competition and deceptive practices in violation of the Illinois Consumer

Fraud Act (Count VIII), 815 I.L.C.S. § 502/2. Mishan moves for summary judgment on all

claims.

---

[1] "Emson" is a shortened form of "E. Mishan & Sons, Inc." that is regularly used by
the company.

# BACKGROUND

Northern District of Illinois Local Rule 56.1 requires that statements of material facts

contain allegations supported by admissible record evidence. L.R. 56.1; *Bobak Sausage*

*Company v. A & J Seven Bridges, Inc.*, 805 F.Supp.2d 503, 507 (N.D. Ill. 2011) (Dow, J.). The

court has broad discretion to enforce and require strict compliance with the local rules. *Benuzzi*

*v. Board of Educ. of the City of Chicago*, 647 F.3d 652, 655 (7th Cir. 2011). Hearthware's initial

response to Mishan's summary judgment motion was stricken for failure to comply with Local

Rule 56.1. Dkt. No. 84. The court reminded Hearthware that each 56.1(b)(3)(C) additional fact

and each dispute of Mishan's Rule 56.1(a)(3) facts must be supported by citation to record

evidence. *Id.* Hearthware was granted seven days to file a corrected response. *Id.*

Hearthware timely filed an amended response. The revised response still fails to comply

with Local Rule 56.1. Some facts contain either no record citations or unclear or inaccurate

citations. Pl. Facts ¶¶ 10, 11, 13, 15, 21, 27, 35. One fact only cites to the complaint. *Id.* ¶ 29.

A number of "facts" primarily consist of arguments or legal conclusions.[2] *Id.* ¶¶ 2, 8, 9, 23, 27,

28, 29, 32, 33, 34. Many of Hearthware's objections to Mishan's statement of facts are

problematic for the same reasons. Additionally, some objections cite principles of law that

"courts have held" without citations. Pl.'s Resp. to Def. Facts ¶¶ 19, 54. Another cites

Hearthware's memorandum in opposition to summary judgment instead of supporting evidence.

*Id.* ¶ 66. It is an advocate's responsibility to provide factual and legal support for the client's

---

[2]      For example, "Sharper Image's imposing of quality standards on ovens
manufactured under a non-exclusive license agreement is very different than making a statement
that the oven is the result of 32 years of Sharper Image ingenuity." Pl. Facts ¶ 23. Rule 56.1
statements are not a place to cut and paste arguments. *Malec v. Sanford*, 191 F.R.D. 581 (N.D.
Ill. 2000) (Castillo, J.)

position. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991); *Dal Pozzo v. Basic Machinery Co., Inc.*, 463 F.3d 609, 613 (7th Cir. 2006). The court is obligated to carefully review statements of facts, eliminating any arguments, conclusions, and assertions unsupported by record evidence. *Bobak*, 805 F.Supp.2d at 507. With this in mind, the following facts are taken from the parties' Local 56.1 statements and exhibits.

A halogen oven is a portable cooker that uses energy from a halogen heat source located in the cooker's lid.[3] Mishan Decl., Ex. 17 at 3. A fan circulates hot air to provide even cooking, while an infrared element simultaneously emits heat waves that cook food from the inside out. *Id;* Def. Facts ¶ 13. Some benefits of a halogen oven are the ability to brown or crisp foods (unlike a microwave), transportability, and speed compared to a conventional oven. *Id.*

The NuWave halogen oven is produced by Hearthware, an Illinois corporation. The NU WAVE trademark was registered in March 2004. Rosenblatt Decl., Ex 3. The NuWave logo – which, in full, reads "NuWave Pro Infrared Oven"– was registered in July 2007. *Id.*, Ex 4. The NuWave oven is sold, in part, through copyrighted infomercials. Pl. Facts ¶ 6. Two NuWave infomercials are at issue. The first, entitled "NUWAVE OVEN INFOMERCIAL," was published in December 2008 and was registered in February 2010. Compl., Ex. 4. The more recent infomercial, entitled "2010 NuWave Oven Infomercial," was first published in October 2010 and was registered in June 2011. *Id.*, Ex. 3. The second infomercial is a moderately updated version of the first.[4] *Id.*

---

[3]    Throughout the parties' submissions, halogen ovens are also referred to as infrared ovens, infrared cooking devices, and convection ovens.

[4]    Neither the complaint nor subsequent briefing distinguishes between the two NuWave infomercials. Because the parties do not differentiate between the two, and both feature the same allegedly copied elements, the court refers to the 2010 infomercial in considering the

The half-hour NuWave infomercial opens with a flurry of incentives for potential buyers, including a two-year warranty and free items such as a blender/food processor. Pl. Facts ¶ 6; Rosenblatt Decl, Ex. 15, NuWave Infomercial (PA 1-661-054). The product's benefits are summarized and then revisited by an upbeat host, who presents the product with the assistance of a "TV Cooking Expert." *Id.* The two hosts energetically sample food cooked in the NuWave oven and explain how the product may improve the lives of buyers. *Id.* This presentation is frequently interrupted by enthusiastic testimonials, demonstrations, and reminders as to the details of the bonus-laden offer. *Id.* The infomercial is rife with images of different types of food cooking illustrated with time-lapse photography. *Id.*

In 2010, Emson, a New York corporation, entered the halogen oven market. Def. Facts ¶¶ 12, 14. Emson is in the business of manufacturing and selling a wide range of consumer products. *Id.* ¶¶ 1, 5. Many of Emson's kitchen and housewares products are licensed to use the Sharper Image trademark.[5] *Id.* ¶¶ 8, 10. In return, The Sharper Image receives royalties and minimums. *Id.* ¶ 8. Emson must comply with a number of licensing requirements, which include product approval by The Sharper Image and other measures to ensure quality control. *Id.* ¶ 9. The Sharper Image did not engineer the Super Wave oven and does not provide either its warranty or money-back guarantee. Pl. Facts ¶¶ 31, 33.

In January 2010, Emson registered "Super Wave" as a trademark. Def. Facts ¶ 19. The product was marketed as the *Sharper Image* Super Wave Oven. *Id.* ¶ 15. The Sharper Image mark is prominently displayed on the Super Wave oven and on its packaging, website, instruction

content of both.

[5]      The Sharper Image no longer operates retail stores. It now primarily licenses its mark for use on third-party products.

manual, and recipe book. *Id.*

In September 2010, Emson hired an independent production company to produce an infomercial for the Super Wave oven. Def. Facts ¶ 20. No actual footage from the NuWave infomercial is included in the Super Wave infomercial but the competing infomercials share a number of similarities. *Id.* ¶ 25. Both have a brisk, energetic tone. Mishan Decl., Ex. 14, Super Wave Infomercial; Rosenblatt Decl, Ex. 15, NuWave Infomercial (PA 1-661-054). Both show many of the same foods being prepared and use time-lapse photography to demonstrate the cooking process. Pl. Facts ¶ 8. Both suggest their respective products may be used in a recreational vehicle ("RV"), a dorm, or on a boat. *Id.* Both feature a host knocking frozen food against a hard surface to demonstrate that it is frozen. *Id.* The hosts are chipper, the testimonials enthusiastic, and the virtues of the product emphatically conveyed. Mishan Decl., Ex. 14, Super Wave Infomercial. The Sharper Image is mentioned dozens of times in the Super Wave infomercial. *Id.* The Super Wave infomercial notes that the Super Wave oven is the result of "thirty-two years of The Sharper Image design ingenuity" and that the Super Wave's warranty and money-back guarantee are provided by The Sharper Image. *Id.*; Pl. Facts ¶ 29.

## DISCUSSION

### I.    Summary Judgment Standard

Summary judgment is appropriate if the record evidence reveals no genuine issue of material fact and Mishan is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 683 (7th Cir. 2010). Mishan bears the initial burden of establishing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If satisfied, the burden shifts to Hearthware to go beyond the pleadings and present

specific facts that show there is a genuine issue for trial. *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004). There is a genuine issue of material fact if the evidence is sufficient to support a reasonable jury verdict in Hearthware's favor. *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001). In considering Mishan's motion, all facts are viewed in the light most favorable to Hearthware. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). However, speculation and conjecture alone are not sufficient to survive a motion for summary judgment. *Traylor v. Brown*, 295 F.3d 783, 791 (7th Cir. 2002).

## II. Count I – Copyright Infringement

The NuWave infomercials are copyrighted works. Pl. Facts ¶6. Hearthware alleges the Super Wave infomercial infringes the NuWave infomercials in violation of 17 U.S.C. §§ 101 *et seq*. To establish infringement, Hearthware must prove the copying of original elements of the works. *Feist Publ'ns, Inc. v. Rural Tel. Serve. Co., Inc.*, 499 U.S. 340, 361 (1991); *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007).

Hearthware's complaint alleges a number of similarities between the infomercials:

- Both suggest using the ovens in an RV, dorm, or boat;

- The hosts in both knock frozen food against a hard surface to demonstrate its solid state;

- Both feature demonstrations of food cooking, including many of the same foods (in particular, salmon cooked at the same time as asparagus);

- Both use similar time-lapse imagery to show the food cooking;

- Both note that the ovens are able to broil, roast, grill, bake, barbecue, steam, dehydrate, and air fry;

- Both use similar words to describe the abilities of the free blenders that come with the products;
- The Super Wave infomercial touts "tri-cooking technology" while the NuWave

6

infomercial promises "triple-combo cooking power."[6]

Compl. at ¶ 49; Pl.'s Resp. to Def. Facts ¶ 43.

Mishan argues that the similar scenes cited by Hearthware are unprotectable *scènes à faire*. The *scènes à faire* doctrine prevents a plaintiff from establishing infringement by pointing to features that are so standard or unavoidable that they fail to distinguish works within a certain class. *Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 929 (7th Cir. 2003). Elements of an original work are not protected if the common idea is only capable of expression in a more or less stereotyped form. *Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 616 (7th Cir. 1982).

*Reed-Union Corp. v. Turtle Wax*, 77 F.3d 909 (7th Cir. 1996), illustrates how the *scènes à faire* doctrine applies to advertisements. In *Reed-Union*, the plaintiff produced a car polish called NU FINISH. *Id.* at 910-911. A NU FINISH TV commercial featured a beat-up car in a junkyard. *Id.* at 913. After NU FINISH was applied, the revived vehicle was subjected to 52 car washes. *Id.* The shine remained. *Id.* The commercial also featured the results of independent lab tests. *Id.* In 1991, defendant Turtle Wax introduced a competing car polish, FINISH 2001.

---

[6]    Hearthware's response belatedly lists approximately thirty additional alleged similarities. Pl.'s Opp. to Mot. for Summ. J. at 5-6; Pl.'s Resp. to Def. Facts ¶ 29. The new similarities include details such as the presence of a male and a female host, the hosts hugging upon greeting, the cooking of a sixteen-pound turkey, and the use of testimonials. *Id.* These alleged similarities did not appear in the complaint. Hearthware failed to indicate these similarities in response to Mishan's contention interrogatories, requesting identification of all words, phrases, imagery, and actions alleged to be identical or substantially similar to the NuWave infomercials. Rosenblatt Decl., Ex 2 at ¶ 8. Mishan's discovery and summary judgment motion understandably focused on similarities alleged in the complaint and in response to its contention interrogatories. For example, in arguing for the application of the *scènes à faire* doctrine, Mishan presents a chart addressing each of the similarities alleged in the complaint. Hearthware may not add new claims *after* the motion for summary judgment was filed without leave of court.

*Id.* at 911. One FINISH 2001 TV commercial featured a car surrounded by strewn-about spare parts and also featured lab test results. *Id.* at 913. Another FINISH 2001 spot featured before-and-after shots of polished cars and then subjected one vehicle to 104 car washes. *Id.* The shine remained. *Id.* The FINISH 2001 commercials did not infringe on the NU FINISH spot because the use of "hackneyed ideas," such as polishing up old cars, washing the polished cars, and citing lab tests, was not protectable.[7] *Id.* at 913-914.

Mishan has produced evidence that the similarities cited by Hearthware are commonplace in the world of halogen oven infomercials. For each element allegedly copied, Mishan presents a comprehensive list of infomercials that incorporated the element prior to Hearthware's copyrighted infomercials. The listing for "time-lapse photography of food cooking in the oven" is representative. This element previously appeared in infomercials for the Convection Aire (2000), the FlavorWave Oven (2001), the FlavorWave Oven Deluxe (2004), the Jet Stream Oven (1990), and the Infrawave Oven (2007). Def. Facts ¶ 35; FitzSimmons Decl., Exs. 1-6; Rosenblatt Decl., Exs. 17, 18. No less than *eight* previous infomercials demonstrate food cooking and Hearthware's infomercials are actually only the third and fourth to specifically show salmon and asparagus cooked *together*. Def. Facts ¶¶ 40, 41. Mishan's argument is further supported by a declaration from the producer/director of over fifty infomercials and commercials that details the standard components of infomercials. FitzSimmons Decl., Ex. 1. Hearthware does not challenge the fact that each purportedly infringing similarity has appeared in numerous prior infomercials.

---

[7]     Although the *scènes à faire* doctrine prevented a finding of infringement, the district court's grant of summary judgment to the defendant on the copyright claim was vacated on other grounds not relevant here. *Reed-Union Corp.,* 77 F.3d at 914.

The similarities cited by Hearthware are, as a practical matter, indispensable or at least standard in presenting a halogen oven infomercial. *Incredible Techs., Inc. v. Virtual Techs., Inc.,* 400 F.3d 1007, 1012 (7th Cir. 2005). They are stock scenes that may only receive copyright protection in the particular forms in which they are expressed. *Atari,* 672 F.2d at 614. Hearthware does not suggest that the NuWave infomercials incorporate any new or novel manners of presenting these commonplace elements. The Super Wave infomercial does not include any actual footage from the NuWave infomercial.

The specific words used to illustrate the abilities of the NuWave oven and the free blender/food processor are unprotectable, as well. This is because short, purely descriptive phrases concerning a product's abilities do not receive protection. *Alberto-Culver Co. v. Andreas Dumon, Inc.,* 466 F.2d 705, 711 (7th Cir. 1972). While "tri-cooking technology" may bear a resemblance to "triple-combo cooking power," both are clearly descriptive phrases that remind viewers that halogen ovens cook in three different ways.[8]

Hearthware's copyright claim cannot be saved by its threadbare allegations of direct copying. Hearthware solely relies on an e-mail exchange between Emson's CEO and the producer of the Super Wave infomercial. In this brief correspondence, the producer notes that the Super Wave infomercial "[w]ould be better if there were things more substantive like Nuwave [sic]," in terms of freebies. *Id.* Emson's CEO responds that "All freebies should be in the tease Same [sic] like Nuwave [sic]." *Id.* A reasonable jury could not find this exchange to be evidence of direct copying.

Even if the NuWave infomercial *did* inspire the Super Wave infomercial, copyright laws

---

[8]    Nothing in the record suggests that either "tri-cooking technology" or "triple-combo cooking power" is trademarked.

9

preclude appropriation only of the elements that are protected by copyright. *Atari*, 672 F.2d at 614. The *sine qua non* of copyright is protecting originality. *Feist*, 499 U.S. at 354. The Super Wave infomercial does not copy any original elements of Hearthware's protected works. Mishan has established that it is entitled to summary judgment on Count I.

## III.    Count II – Trademark Infringement

Count II asserts trademark infringement under 15 U.S.C. §1114, based on Emson's marketing, advertising, and selling of the Super Wave oven. Hearthware must first establish that it has a protectable registered trademark. *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 897 (7th Cir. 2001). This element is satisfied by Hearthware's unchallenged registration of the NU WAVE trademark in March 2004 and logo in 2007. 15 U.S.C. § 1115(a); *Door Systems, Inc. v. Pro-Line Door Systems, Inc.*, 83 F.3d 169, 172 (7th Cir. 1996). Hearthware must also prove there is a likelihood of confusion as to the origin of the Super Wave oven. *Id.* Seven factors are considered in evaluating whether there is a likelihood of confusion: (1) the similarity of the marks in appearance and suggestion, (2) the similarity of the products in connection with which the marks are used, (3) the area and manner of the marks' concurrent use, (4) the likely degree of care used by consumers, (5) the strength of the plaintiff's mark, (6) the existence of actual confusion, (7) the intent of the defendant to "palm off" its goods as those of the plaintiff. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 931 (7th Cir. 2008). No single factor is dispositive, but some factors carry particular weight: the similarity of the marks, the existence of actual confusion, and the intent to palm off the goods. *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1044 (7th Cir. 2000).

*1.    Similarity of the Marks*

The court not only compares the two marks side by side, but in light of what happens in the marketplace. *AutoZone,* 543 F.3d at 930 (7th Cir. 2008). Visual characteristics of the product – such as packaging, coloring, and labeling – may be significant factors in determining whether there is a likelihood of confusion. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 644 (7th Cir. 2001).

The parties' marks consist of two words; the second of both is "wave."[9] The trademarked NuWave logo features "Nu" written in large, black cursive lettering. Rosenblatt Decl., Ex. 19. "Wave" is written in a red, blocky font that slants slightly to the right. *Id.* The redness of the lettering fades from left to right; that is, the "w" is a deep red whereas the "e" is pink. *Id.* Below the "NuWave" logo is the phrase "PRO INFRARED OVEN." *Id.* "PRO" is written in white letters in a red block. *Id.* The redness of the block fades from left to right. *Id.* "INFRARED OVEN" is written in white letters in a black block. *Id.* The packaging echos the red, black, and white color scheme of the logo. *Id.* The NuWave oven box is primarily white, with a large photo of the oven. *Id.* The box prominently features the trademarked NuWave logo.[10] *Id.*

On the Super Wave packaging, the words "SUPER WAVE DIGITAL OVEN" are written in a thin, white font that does not slant in either direction. *Id.* These words are in a bright blue box, which fades to gray from right to left. *Id.* The overall packaging is primarily black, rather than white. *Id.* Below "SUPER WAVE DIGITAL OVEN," it is noted that the product comes "WITH 8 PRE-PROGRAMMED SETTINGS." *Id.* The box prominently features a photo of the

---

[9]     The registration for the NU WAVE mark notes that no claim is made to the exclusive right to use "wave," apart from the NU WAVE mark. Rosenblatt Decl., Ex. 3.

[10]     Neither party provided exhibits showcasing different versions of the packaging.

product. *Id.* A number of the product's benefits are listed.[11] Additionally, the Sharper Image name is prominently displayed in conjunction with the Super Wave name on the infomercial, retail packaging, and website. The Sharper Image logo, which features white lettering in a black box, is on the upper lefthand corner of the package. *Id.* The Super Wave oven is packaged in a manner consistent with other Sharper Image-branded Emson products, further aligning the product with the Sharper Image mark. Mishan Decl., Ex. 13 at 5, 9, 15, 14.

Despite the shared use the term "wave," the presentation of the marks is entirely different. Emson's emphasis on the Sharper Image connection further distinguishes the products in the marketplace and makes it less likely that a customer would believe that Hearthware sponsored, endorsed, or was otherwise affiliated with the Super Wave oven. *Nike, Inc. v. "Just Did It" Enters.*, 6 F.3d 1225, 1228-29 (7th Cir. 1993); *see also Sullivan III v. CBS Corp.*, 385 F.3d 772, 778 (7th Cir. 2004) (prominent display of different names on the marks may reduce the likelihood of confusion, even when the marks share other similarities). Viewed in their entirety, the parties' marks are not visually similar and create a different overall impression. This factor clearly favors Mishan.

2. *Similarity of the Products and Services*

The court considers whether the products are the kind that the public might attribute to a single source. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 463 (7th Cir. 2000). Both products are halogen ovens. Consumers might attribute similar halogen ovens to a single source. This factor favors Hearthware.

---

[11] The described packaging is for the digital version of the Super Wave oven. Emson also produces an analog version of its Super Wave oven, which features similar packaging design. Mishan Decl., Ex. 4.

3.    *Area and Manner of Concurrent Use*

This factor assesses whether there is a relationship in the use, promotion, distribution, or sales between the parties' goods. *AutoZone*, 543 F.3d at 932. The parties sell their halogen ovens nationally through retail outlets, websites, and infomercials. This factor favors Hearthware.

4.    *Degree of Care Exercised by Consumers*

Neither party addresses this factor. A consumer is likely to exercise a lower level of discrimination in shopping for a product that is widely accessible and inexpensive. *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 683 (7th Cir. 2001). Both halogen ovens are available through retail outlets, infomercials, and websites. However, the products are not inexpensive, as they generally are priced over $100. Mishan Decl., Ex. 14; Rosenblatt Decl., Ex. 16. This factor does not clearly favor either party.

5.    *Strength of Hearthware's Mark*

Encroachment on a stronger mark is more likely to cause confusion. *AutoZone*, 543 F.3d at 933. The strength of a mark is assessed by evaluating its overall economic and marketing strength. *Id.* A mark may also be strong because of its uniqueness. *Telemed Corp. v. Tel-Med, Inc.*, 588 F.2d 213, 219 (7th Cir. 1978). Other factors, such as the frequently of a mark's display and the extent to which a mark is promoted, may also be relevant. *AutoZone*, 543 F.3d at 933.

Hearthware's assertion that it has strong market leadership because it has won many awards for its infomercials sheds no light on strength of its marks. Pl. Facts ¶ 20. Hearthware's citation to the trademark registration as a sign of its marks' strength is misplaced, as well; nothing in the trademark registration illustrates the strength of its marks. Rosenblatt Decl., Exs.

3, 4. Neither party presents customer testimony or consumer surveys regarding the strength of Hearthware's mark. The record does not support a finding on the overall economic and marketing strength of Hearthware's mark.

The strength of a mark also implicates its distinctiveness or tendency to identify particular products as emanating from a single source. *Sands, Taylor & Wood Co.*, 978 F.2d 947, 959 (7th Cir. 1992). In ascending order of distinctiveness, the five categories of trademarks are: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful. *CAE, Inc.*, 267 F.3d at 684. The term "wave," in the context of the NuWave and Super Wave ovens, is merely descriptive because it refers to the infrared wave cooking feature of halogen ovens. Def. Facts ¶ 51. A number of third-party halogen ovens, including the FlavorWave and QuickWave ovens, also use "wave" as a component of their marks. Def. Facts ¶ 59. At least sixteen other non-halogen ovens, microwave ovens, and toaster ovens have registered trademarks that include "wave." Def. Facts ¶ 60. This factor strongly favors Mishan.

6.    *Actual Confusion*

Evidence of actual confusion is entitled to substantial weight in considering the likelihood of confusion. *CAE, Inc.*, 267 F.3d at 678. Mishan's CEO is unaware of any consumer confusion between the marks, despite selling over 203,000 Super Wave ovens as of February 2012. Def. Facts ¶ 65. Mishan submits a consumer survey conducted by its expert, Dr. Warren J. Keegan. This survey consisted of approximately 300 respondents likely to purchase a halogen oven through an infomercial. Keegan Decl., Ex. 1 at ¶ 43. The survey employed a "test vs. control" design to evaluate the possibility of confusion between the marks. *Id.* at ¶¶ 60, 61. The control group viewed an abbreviated version of the Super Wave infomercial and an

abbreviated version of an infomercial for the FlavorWave Oven, another competitor in the halogen oven market. *Id.* at ¶¶ 63, 64. This comparison established the standard "noise" in the market or the extent to which consumers associate unrelated products within the category for no particular reason. *Id.* at ¶ 62. The test group viewed abbreviated versions of the NuWave and Super Wave infomercials. *Id.* at ¶ 65. The respondents in each group were then asked whether they thought the products were produced by companies that were either the same or affiliated. *Id.* at ¶ 69. Fifty-nine percent of the viewers in the control group thought the ovens (NuWave and FlavorWave) were produced by the same or affiliated companies. *Id.* at ¶ 73. Approximately forty-two percent of the viewers in the test group thought the ovens in the infomercial they viewed (NuWave and Super Wave) originated with the same or affiliated companies. *Id.* at ¶ 73. The expert concluded there is no likelihood of confusion between the NuWave and Super Wave marks because the test group results were significantly lower than the general level of "noise" for competing halogen ovens. *Id.* at ¶ 74.

Hearthware admits that it has no evidence of actual confusion. Pl.'s Resp. to Def. Facts ¶ 64. Nonetheless, Hearthware repeatedly refers to "159 audio recordings of confused customers" who called their customer service center.[12] Pl. Facts ¶10. These calls are not evidence of actual confusion. Neither the actual recordings nor a transcript of these calls was submitted to the court.[13] Hearthware submitted recordings of the calls to Mishan's expert, Dr.

---

[12]     These allegedly confused customers were not calling to place orders for ovens, as orders are generally placed through a third-party call center rather than through Hearthware's customer service center. Beltran Decl., ¶ 2.

[13]     Hearthware submitted the call transcript of one Super Wave owner who initially contacted the Sharper Image number but was incorrectly connected to the Hearthware call center. Dunn Decl., Ex. 1. This call does not suggest consumer confusion; rather, it shows that the Sharper Image call center mistakenly forwarded a caller to the wrong number on one occasion.

Keegan, who conducted a content analysis and concluded they were not evidence of actual confusion.[14] Keegan Decl., Ex. 1 at ¶¶ 19 - 25. While Hearthware challenges the results of Dr. Keegan's analysis, there is nothing in the record to support a reasonable inference that these callers were "confused" regarding the marks.

Although Hearthware is not required to prove actual confusion to prevail on this element, it must provide some evidence of the likelihood of confusion; unsupported theories about how consumers might be confused are insufficient. *Barbecue Marx.*, 235 F.3d at 1045-1046; *Reed-Union*, 77 F.3d at 912. This factor favors Mishan.

### 7. Attempt to Palm Off its Product

There is no evidence that Mishan attempted to palm off the Super Wave oven as related to the NuWave oven. Rather, the uncontested evidence indicates that Mishan named its product the "Super Wave" for innocent reasons. The term "wave" is based on the infrared wave cooking technique. Def. Facts ¶ 17. Since 1995, Emson has marketed other cooking products with "wave" in their names, including the Bacon Wave, Sausage Wave, Chip Wave, Stone Wave, and Omelet Wave. *Id.* at ¶ 56. Emson also has marketed a number of other housewares products with "Super" in their names, including the Super Sewing Machine, Super Scissors, Super 5 Edge Wipers, and Super Hear. *Id.* at ¶ 63. The use of the Sharper Image mark along with the Super Wave mark in infomercials, on packaging, and on websites indicates that Mishan distinguished

---

[14]     Dr. Keegan concluded that in 25% of the calls it could not be determined which oven the caller actually ordered. Keegan Decl., Ex. 1 at ¶ 20. The calls confirmable as Super Wave customers erroneously calling the NuWave line were *de minimus*, in light of the high number of callers correctly calling the number, as well as other factors unrelated to confusion or due to Hearthware's own actions. *Id.*, Ex. 1 at ¶ 25. For example, Hearthware purchased "Super Wave" and "Sharper Image" as search engine keywords to increase traffic to the NuWave website; as a result, a Google search for "super wave oven" produced the phone number for NuWave. *Id.* at ¶ 21; Def. Facts ¶ 67.

its product from the NuWave oven. The use of "Super" instead of "Nu," the distinct logos, the different product designs, and the different packaging all support a reasonable inference that Mishan did not intend to create confusion.

### 8. Balancing the Factors

Whether consumers are likely to be confused is a factual issue that may be resolved on summary judgment if the evidence is sufficiently one-sided. *Packman*, 267 F.3d at 637. The court assigns varying weights to each factor based on the facts presented. *Id.* at 643. The three most important factors are similarity of the mark, intent of the infringer, and actual confusion. *Barbecue Marx*, 235 F.3d at 1044. All favor Mishan. Both marks include the word "wave" but this term is descriptive and is frequently used for other items in the same kitchen and household product category. There is no evidence that Emson intended to infringe on Hearthware's mark, and there are a number of innocent reasons why the company chose to register the Super Wave mark. Hearthware admits that it has no evidence of actual consumer confusion. Def. Facts ¶ 64. The only factors that favor Hearthware are product similarity and the area and manner of concurrent use. These factors would apply to any competitors in the same product line, regardless of the likelihood of confusion. A finding of likely confusion cannot be based on pure conjecture. *Libman Co. v. Vining Industries, Inc.*, 69 F.3d 1360, 1363 (7th Cir. 1995). Summary judgment is granted to Mishan on Count II.

## IV. Counts III Through VIII – Claims Related to Use of the Super Wave Mark

Counts III through VIII are based upon Mishan's continued marketing, advertising, and selling of the Super Wave oven in light of Hearthware's registered marks.[15] Counts III (false

---

[15] Counts III, IV, VI , and VIII are also based on Mishan's references to the Sharper Image mark in the Super Wave oven infomercial. These facets of Counts III, IV, VI, and VIII are

association/designation of origin), IV (false advertising), and V (unfair competition) assert claims under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Count VI alleges deceptive trade practices under the Uniform Deceptive Trade Practices Act, 815 I.L.C.S. § 510/2. Count VII asserts common law trademark infringement. Count VIII claims unfair competition and deceptive practices under the Illinois Consumer Fraud Act, 815 I.L.C.S. § 505/2.

The likelihood of confusion analysis that applies to federal trademark infringement is also used to assess the merits of Hearthware's claims under Counts III through VIII to the extent they rest upon the use of an allegedly similar mark. *See Trans Union LLC v. Credit Research, Inc.*, 142 F.Supp.2d 1029, 1038 (N.D. Ill. 2001) (Moran, J.) (unfair competition claims under the Lanham Act, Illinois common law trademark claims, and claims under the Illinois Consumer Fraud and Deceptive Business Practices Act are analyzed under the same standard as trademark infringement claims); *see also AuzoZone*, 543 F.3d at 929 (likelihood of confusion a necessary element of infringement and unfair competition claims under both Illinois and federal law); *Rust Environment & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1214 (7th Cir. 1997) (likelihood of confusion must be shown for claims under 15 U.S.C. § 1125(a)). Because the factors considered in evaluating the likelihood of confusion unquestionably favor Mishan, summary judgment is appropriate on Counts V and VII, as well as Counts III, IV, VI, and VIII to the extent they rest upon Mishan's use of the Super Wave mark.

## V.     Counts III, IV, VI, and VIII – Claims Related to Allegedly False Statements

Counts III, VI, VI, and VIII also assert claims stemming from statements in the Super Wave infomercial that involve the product's relationship with The Sharper Image. These three

discussed below.

statements, which appear in varied forms, are: (1) the Super Wave oven is the result of thirty-two years of Sharper Image design ingenuity, (2) the Super Wave oven comes with a five-year Sharper Image warranty, and (3) the Super Wave oven is backed by a sixty-day money-back Sharper Image guarantee. Pl. Facts ¶ 29. Hearthware argues the first statement is actionable because The Sharper Image did not engineer the product. *Id.* ¶ 33. Hearthware contends the second and third statements are actionable because the warranty fulfillment and money-back guarantee are actually provided by Emson rather than The Sharper Image. *Id.* ¶ 31.

Counts III (false association/designation of origin) and IV (false advertising) assert claims under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Counts VI and VIII are Illinois state claims for deceptive trade practices under the Uniform Deceptive Trade Practices Act (Count VI), 815 I.L.C.S. § 510, and for unfair competition and deceptive practices under the Illinois Consumer Fraud Act (Count VIII), 815 I.L.C.S. § 505/2. Hearthware concedes its claims under Illinois law are resolved under Lanham Act standards. *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983).

To prevail on Counts III, IV, VI, and VIII, Hearthware must demonstrate that Mishan made a false or misleading statement involving goods entering interstate commerce that actually or is likely to deceive a substantial segment of the advertisement's audience. 15 U.S.C. § 1125(a)(1); *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir. 1999). Additionally, the statement must involve a subject material to the decision to purchase the goods and result in actual or probable injury to the plaintiff. *Id.*

There are two categories of false statements under the Lanham Act: commercial claims that are literally false as a factual matter, and claims that may be literally true or ambiguous but

19

either convey a false impression or mislead in context. *Hot Wax, Inc. v. Turtle Wax*, 191 F.3d 813, 819 (7th Cir. 1999). A literal falsity is "bald-faced, egregious, undeniable, over the top." *Schering-Plough Healthcare Products, Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 512 (7th Cir. 2009). If a statement is literally false, Hearthware is not required to show that the false statements actually deceived customers, or were likely to do so. *B. Sanfield, Inc.*, 168 F.3d at 971.

Mishan argues the statements are not literally false because The Sharper Image reviewed and approved the oven, infomercial, packaging, instructions, and warranty cards. In Mishan's view, this oversight ensured that the product and its guarantees were consistent with Sharper Image standards. Mishan contends that the company "stands in the shoes" of The Sharper Image, preventing its allusions to the Sharper Image mark from being literally false. Hearthware's argument is simpler: The Sharper Image neither designed the Super Wave oven nor actually provides the guaranty or warranty, so these statements are literally false. A reasonable jury could determine the statements presented in the Super Wave infomercial are literally false.

Nevertheless, to be successful on the false advertising components of Counts III, IV, VI, and VIII, Hearthware still must show that the statements involve a subject that was material to the decision to purchase a halogen oven. 15 U.S.C. § 1125(a)(1); *B. Sanfield*, 168 F.3d at 971. Mishan presents a second consumer survey conducted by Dr. Keegan. Keegan Decl., Ex. 1. This survey, like the first, was administered to respondents likely to purchase a countertop oven from an infomercial. *Id.* at ¶ 50. These 153 respondents watched an abbreviated version of the Super Wave infomercial that included each of the three allegedly false statements. *Id.* at ¶ 51. When asked which elements of the product or offer would appeal to them, provided they were

20

considering purchasing the Super Wave oven, only seven (five percent of the sample) mentioned either The Sharper Image or the brand. *Id.* at ¶¶ 52, 53. When asked if the Super Wave oven came with a warranty, eighty-two percent recalled that the product offered a warranty. *Id.* at ¶ 54. However, when asked what they specifically recalled about the warranty, only seven (five percent of the overall sample) mentioned The Sharper Image or brand. *Id.* at ¶ 55. Out of the eighty-eight percent of respondents who recalled that the product came with a money-back guarantee, not a single respondent recalled that The Sharper Image or any brand was mentioned in relation to the guarantee. *Id.* at ¶¶ 56-57.

Mishan has satisfied its initial burden to show that the statements in issue did not involve subjects material to the decision to purchase a Super Wave oven. Hearthware neither challenges the results of this consumer survey nor submits affidavits, depositions, consumer surveys, or any other material creating an issue of fact regarding this necessary element of its claims under Counts III, IV, VI, and VIII.

Summary judgment is granted to Mishan on Counts III, IV, VI and VIII.

## CONCLUSION

Hearthware and Mishan are rivals in the halogen oven market. Mishan brought the rivalry to the airwaves when it produced an infomercial for its Super Wave oven. Hearthware brought the rivalry to the courthouse when it filed this eight-count suit. At the suit's core is the allegation that Mishan is not following the marketplace's rules of engagement, as established by commercial and intellectual property law.

The question is not whether the competition between these two companies is heated; it clearly is. The question is whether Mishan has violated the law. The answer to that question, as

a matter of law, is no.  Although the Super Wave and NuWave infomercials share many

similarities, copyright law only protects the original elements of expression.  It does not prevent

an oven advertisement from showing how the oven cooks, just because another company did so

first.  Linguistically, the "Super Wave" mark bears a resemblance to the "NuWave" mark.  The

laws invoked by Hearthware, however, require the company to establish a likelihood of

confusion between the marks.  Hearthware has not done so.  The producers of the Flavorwave,

Big Boss Rapid Wave, and Infrawave halogen ovens may emit a small sigh of relief.

Fierce competition is not the same as unfair competition.  Based on the record before the

court, the battle between Hearthware and Mishan belongs in the marketplace rather than the

courthouse.  Mishan's summary judgment motion is granted.


ENTER:


Suzanne B. Conlon
United States District Judge

August 10, 2012